[No. 20635-8-II.   Division Two.   November 21, 1997.]

*In the Matter of the Estate of* ANDREA C. BAROVIC.

*In the Matter of the Estate of* MIKE BAROVIC.

*In the Matter of the* DONALD M. BAROVIC TRUST.

*Douglas A. Schafer* of *Schafer Law Firm*; *Neil J. Hoff* of *Neil J. Hoff & Associates*; and *A. Shawn Hicks* of *Hicks & Selicoff*, for petitioners.

*John A. Miller* of *Miller & Dart, P.S., Inc.*; *S. Alan Weaver* of *Eisenhower & Carlson*; *Lawrence E. Nelson* of *Law Offices of Lawrence E. Nelson*; and *Bryce H. Dille* and *Hollis H. Barnett* of *Campbell, Dille & Barnett*, for respondents.

*Pamela McCain-Barovic*, pro se.

*Nicholas Wagner* on behalf of American Civil Liberties Union, amicus curiae.

BRIDGEWATER, A.C.J. — Attorney Douglas Schafer appeals from an order of the trial court disqualifying him from representing Donald Barovic, a beneficiary of a trust and an heir of the estates of his deceased parents. We hold that the order of disqualification should be vacated because Schafer was not given notice and an opportunity to respond before his removal. We reverse.

Douglas Schafer represented Donald Barovic. Various motions regarding three cases, *In re the Estate of Andrea C. Barovic, Deceased*; *In re the Estate of Mike Barovic a/k/a Michael Barovic and Mitchell Barovic, Deceased*; and *In the Matter of the Donald M. Barovic Trust*, were scheduled for argument on February 2, 1996, before Judge Grant Anderson. That same day, Schafer filed an affidavit of prejudice against Judge Anderson, claiming that his client could not obtain fair and impartial rulings before Judge Anderson or any other department of the Pierce County Superior Court. For the preceding year, Schafer had been publicly critical of the Pierce County Superior Court's administrative handling of guardianship cases and had written letters to all the Pierce County Superior Court judges detailing his concerns and criticisms and accusing the guardianship system of routinely denying the elderly and disabled their fundamental right to due process. Schafer explained in his affidavit of prejudice:

> To publicly illustrate those problems to all potentially responsible legal professionals and others, I have published and distributed transcripts from the guardianship case of my client's father, the late Mike Barovic (Cause No. 94-4-00288-3). . . .
>
> I began representing Don Barovic on July 9, 1995. Before that time, I had distributed throughout Pierce County and the entire state of Washington hundreds of copies of the above-referenced transcripts illustrating, in my opinion, deficiencies in the Pierce County Superior Court's handling of guardianship cases. In the last month, Don Barovic has distributed hundreds of additional copies of those transcripts to members and staff of the Washington Legislature and other

state officials, and urged the adoption of legislation that may correct some of the recognized problems in Pierce County and, possibly, elsewhere.

Attached to his affidavit of prejudice were copies of the letters he had sent to every Pierce County Superior Court judge criticizing the guardianship system and blaming the judges for failing to act to improve the system. Judge Anderson disqualified himself and the case was reassigned to Judge Donald Thompson.

Schafer sought the recusal of Judge Thompson and all other Pierce County Superior Court departments one week later. He requested that the Barovic cases be assigned to a visiting judge because he did not believe that it would be possible for any department of the Pierce County Superior Court to be truly unaffected by the activities that he had been pursuing over the past year. Judge Thompson continued the matter until March 8, 1996, when he disqualified himself based on prior ownership of Key Bank stock, which was a cotrustee in one of the cases, and based on the appearance of fairness problem created by Schafer's letters to the Pierce County Superior Court judges. After announcing his recusal, Judge Thompson continued:

> Now, that, of course, causes profound problems, because what do we do? We send the files to the court administrator for reassignment to another department. And because of the letters that Mr. Schafer has filed in this case, and by filing them they are made public, in essence every judge and every commissioner in Pierce County is going to be disqualified. . . .
>
> . . . .
>
> And the letters of Mr. Schafer are negative, they're accusatory, they're inflammatory, and cause problems for every judge on this bench. And if they come to the attention of a visiting judge, would cause problems for a visiting judge.

Judge Thompson then noted what he felt were violations of the Rules of Professional Conduct by Schafer and held that Schafer's continuance would jeopardize the abil-

ity to obtain a fair, unbiased judge. Without giving prior notice to Schafer or giving him an opportunity to respond, Judge Thompson then ordered Schafer's removal from any of the Barovic matters, trust or estate.

This court granted Schafer's motion for discretionary review and stayed the trial court's order of disqualification pending our review. Matters in the estate have proceeded with Schafer's participation before a retired Pierce County Superior Court judge.

On appeal, Schafer contends that he was not afforded the proper notice and opportunity to be heard. Because the superior court was not conducting and could not conduct a disciplinary hearing, *Hallmann v. Sturm Ruger & Co.*, 31 Wn. App. 50, 53, 639 P.2d 805 (1982) (citing *Johnston v. Beneficial Management Corp. of Am.*, 26 Wn. App. 671, 614 P.2d 661 (1980) and *Pantori, Inc. v. Stephenson*, 384 So. 2d 1357 (Fla. Dist. Ct. App. 1980)), Schafer was not entitled to the notice and hearing required in the Rules for Lawyer Discipline. But *Hallmann*, 31 Wn. App. at 55, held that an attorney appearing pro hac vice must be provided with notice and an opportunity to respond before his permission to appear is revoked by the trial court. Both *Hahn v. Boeing Co.*, 95 Wn.2d 28, 36, 621 P.2d 1263 (1980) and *Hallmann*, 31 Wn. App. at 54, equate the revocation of permission to appear pro hac vice with disqualification. *Hallmann* held that, although an attorney does not have any constitutional or statutory right to notice and a hearing before permission to appear pro hac vice is revoked, such steps are necessary for policy reasons. 31 Wn. App. at 52. "We hold then that an attorney must be notified of the conduct the court will rely on to revoke, and the specific reason, preferably in writing, why the conduct may justify revocation. The attorney must be given a meaningful opportunity to respond although a full scale hearing is not required." *Hallmann*, 31 Wn. App. at 55. The notice and opportunity to respond required prior to revocation of permission to appear pro hac vice requires similar notice and opportunity to re-

spond prior to disqualification and warrants reversal and vacation of the trial court's order disqualifying Schafer.

Because this issue is dispositive, we do not reach the merits of Schafer's other arguments. Specifically, we do not address whether his lobbying efforts were separate and independent from the proceedings before the court, whether his continued representation would jeopardize the ability to obtain a fair and unbiased judge to preside over the proceedings, or whether the superior court's action implicated his right of free speech.

In vacating the order that disqualifies Schafer, we observe that the Estate of Michael Barovic does not oppose vacation of the order. Further, we note that attorney disqualification is an extreme remedy, and the trial court should be slow to use its authority to employ such a sanction on any basis, much less one based upon the assumption that no judge could be fair to a litigant based on the identity of his attorney.

We reverse.

MORGAN and ARMSTRONG, JJ., concur.

Reconsideration denied February 3, 1998.
Review denied at 136 Wn.2d 1011 (1998).