[No. 47301–3.   En Banc.   January 14, 1982.]

PAUL W. JOHNSTON, ET AL, *Petitioners,* v. BENEFICIAL MANAGEMENT CORPORATION OF AMERICA, ET AL, *Respondents,* ROGER M. LEED, *Petitioner.*

*Roger M. Leed,* pro se, and *David A. Bricklin,* for petitioners.

*Nicholas F. Corning* and *Treece, Richdale & Malone,* for respondents.

DIMMICK, J.—Roger M. Leed, attorney for petitioners in a class action suit, was held in contempt of court for violating a protective order prohibiting communications with actual or potential class members who were not formal parties to the action. The Court of Appeals, Division One, affirmed the judgment. We reverse.

The issue is whether Leed violated the protective order by communicating with class members by mail without complying with the order's provisions requiring prior court approval. Leed asserts that the order did not reach his conduct either because the order generally did not apply, or the letter at issue was within an exception for communications occurring in the "regular course of business or office." A review of the purposes of the order along with other factors lead us to the conclusion that the order generally did not apply to Leed's conduct. Accordingly, we do not deal with the meaning of "regular course of business"; nor do we deal with Leed's assertion that the order, if applicable, violated his First Amendment rights.

In March 1972, purchasers of merchandise on retail installment contracts commenced a class action suit alleging that the sellers had violated several consumer protection statutes. In April 1973, before the class was certified, the Honorable Earl Horswill entered an "Agreed Order for Prevention of Potential Abuses of Class Action" presented by Leed. The order provided in pertinent part:

All parties hereto and their counsel are hereby forbidden, directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent of and approval of the communication by order of the Court. Any such proposed communication shall be presented to the Court in writing with a designation of or description of all addressees and with a motion and proposed order for prior approval by the Court of the proposed communication and proposed addressees. The communications forbidden by this rule include, but are not limited to, (a) solicitation, directly or indirectly, of legal representation of potential and actual class members who are not formal parties to the class action; (b) solicitation of fees and expenses and agreements to pay fees and expenses, from potential and actual class members who are not formal parties to the class action; (c) solicitation by formal parties to the class action of requests by class members to opt out in class actions under sub–paragraph (b)(3) of CR 23; and (d) communications from counsel or a party which may tend to misrepresent the status, purposes, and effects of the action, and of actual or potential court orders therein, which may create impressions tending, without cause, to reflect adversely on any party, any counsel, the Court, or the administration of justice. The obligations and prohibitions of this rule are not exclusive. All other ethical, legal, and equitable obligations are unaffected by this rule.

This order does not forbid (1) communications between an attorney and his client or a prospective client who has, on the initiative of the client or prospective client, consulted with, employed, or proposed to employ the attorney; or (2) communications occurring in the regular course of business or office which do not have the effect of soliciting representation by counsel, or misrepresent-

ing the status, purposes, or effect of the action and orders therein.

When appropriate, the Court may approve the substance of permitted communications and general descriptions of the circumstances under which the communication is approved, and general descriptions of the parties to whom it may be sent, and the parties who may send the communication.[1]

The petitioners settled with one group of defendants in 1977. In February 1978, a second group of defendants, respondents herein, agreed to settle. On February 22, the parties entered into a settlement agreement providing that petitioners' attorney was to mail a claim form to each beneficiary and also publish the form. Under the terms of the settlement agreement, respondents were allowed to apply to the court prior to distribution of the funds, for reimbursement of amounts of the fund exceeding reasonable claims. The notice of the proposed settlement and a claim form were sent to class members on April 3. On May 4, Leed's legal assistant again wrote to class members not formal parties to the action who had not yet filed a claim in response to the notice of the proposed settlement. The letter reminded class members that they must submit their claim forms by May 19 in order to receive benefits from the settlement.[2] The second letter was written without either

---

[1]This order predated King County Local Rule 23(f), but the rule and order entered herein are virtually identical. For a discussion of the local rule, and another similar order, *see Darling v. Champion Home Builders,* 96 Wn.2d 701, 638 P.2d 1249 (1982).

[2]The letter stated as follows:

"Law Offices of Roger M. Leed
"1411 Fourth Ave. Bldg. Suite 610
"Seattle, Wa. 98101
"Telephone: 624–8901
"May 4, 1978

"Re: *Johnston v. National Vacuum & Sewing Machine Stores*
"Dear Purchaser:

"A short time ago, you received a letter with an attached claim form explaining the settlement agreement for Johnston v. National Vacuum and Sewing Machine Stores. *This letter is to remind you that you must mail the claim form*

the express consent or approval of the court or the knowledge of the respondents or their counsel.

In June 1978, respondents filed a motion and affidavit for order to show cause why Roger M. Leed should not be held in contempt of court for violating the protective order entered in April 1973 and required to indemnify the respondents for any loss caused by the letter sent on May 4, 1978. Respondents asserted that the sinister nature of the communication was shown by the fact that of the 248 claims filed, 144 were received after the reminder letter of May 4.

Judge Horswill passed away before he could rule on the contempt motion and the case was assigned to the Honorable Warren Chan. Judge Chan considered the motion for order to show cause and on February 15, 1979, issued a letter holding Leed in contempt of court. On April 16, 1979, Judge Chan signed a contempt order fining Leed $100 and ordering him to pay respondents' attorney's fees of $350. The court denied damages, finding the letter generated legitimate claims effectuating the purpose of the court approved settlement.

The Court of Appeals affirmed the trial court and determined that the reminder letter of May 4 "violated the spirit of the order which was to prevent potential abuses in the management of the class action." *Johnston v. Beneficial Management Corp. of America,* 26 Wn. App. 671, 676, 614 P.2d 661 (1980).

■ In contempt proceedings, an order will not be

---

*by Friday, May 19, 1978 in order to receive benefits from the settlement.*

"Your purchase has already been confirmed by our records and you do not have to return your appliance in order to receive a payment from the settlement fund. You are eligible for such a payment provided you send in your claim form by *May 19, 1978.*

"If you have any questions, you are free to write or call this office.

"Sincerely,
"ALICE V. POGGI
"Legal Assistant to
"Roger M. Leed

"AVP:pn"

expanded by implication beyond the meaning of its terms when read in light of the issues and the purposes for which the suit was brought. The facts found must constitute a plain violation of the order. *State v. International Typographical Union,* 57 Wn.2d 151, 158, 356 P.2d 6 (1960); 17 C.J.S. *Contempt* § 12 (1963). Although such proceedings are appropriate means to enforce the court's orders, since the results are severe, strict construction is required.

■ The April 4, 1973, protective order, when read in light of the foregoing rule and the purposes it was to serve, clearly did not contemplate the reminder letter sent by Leed on May 4, 1978. Protective orders such as the one entered by the trial court are meant to prevent potential abuses of class actions. As discussed in *Darling v. Champion Home Builders,* 96 Wn.2d 701, 638 P.2d 1249 (1982), such abuses include stirring up litigation, solicitation of funds, the maintenance of the action by counsel, exertion of undue influence on class members to opt out, and misrepresentations creating false impressions of the action and the court's role.

The order entered herein is similar to one recommended in the Manual for Complex Litigation (Manual) as an appropriate method to prevent the abuses that may arise. 1 Pt. 2 J. Moore, *Federal Practice,* App. § 1.41, at 226 (1981).[3] The specific abuses among those aforementioned that the protective order is to reach are listed in the order as:

(1) solicitation of direct legal representation of potential and actual class members who are not formal parties to the class action; (2) solicitation of funds and agreements to pay fees and expenses from potential and actual class members who are not formal parties to the class action; (3) solicitation by defendants of requests by class mem-

---

[3]The order suggested by the Manual provides that if a party asserts a constitutional right to communicate without prior restraint, he has 5 days after the communication in which to file the communication with the court. The suggested order also includes a clause setting forth a hearing date to present arguments for relaxation of order. The order entered in the instant case does not include these provisos. Otherwise, the orders are identical.

bers to opt out in class actions under subparagraph (b)(3) of Rule 23; and (4) unauthorized direct or indirect communications from counsel or a party, which may misrepresent the status, purposes and effects of the action and of court orders therein and which may confuse actual and potential class members and create impressions which may reflect adversely on the court or the administration of justice.

Manual § 1.41, at 31–32.

Although the order by its terms does not prohibit those listed abuses exclusively, they are instructive in understanding the purposes and the scope of the order. It is evident from the specific abuses listed in the order and Manual that the concern for adopting the protective order is based upon problems that may arise *prior* to the final resolution of the suit through trial or settlement. Another consideration supporting this analysis is that the Manual discusses the abuses and the protective order under the title "Pretrial Procedures in Complex Civil Cases." In addition, the Manual specifically provides that the recommended protective order is "not intended to be either permanent or an absolute prohibition of contact . . ." Manual § 1.41, at 34.

The order entered herein was drafted in April 1973, before the class was certified, to protect against the very abuses discussed above. Apparently the parties complied with the protective order throughout the proceedings and the abuses that the order was to prevent never occurred. Settlement was reached in February 1978 and a fund was created from which the claimants would be paid proportionately. Pursuant to the proposed settlement agreement, Leed, as attorney for the class, was to administer the settlement. He accordingly sent the proposed settlement and claim form to class members as required. Then, on May 4, Leed sent the letter in question to class members reminding them of the deadline for filing claims and clarifying the meaning of the notice. The letter did not solicit legal representation or funds; nor did it misrepresent the status, purpose or effects of the action. It was sent after the rights

of the parties had been fixed by the settlement. Judge Horswill directed Leed to notify members of the class of the proposed settlement which he would formally sign on May 5. The whole dispute is whether the reminder letter was excessive notice. Leed maintains the letter was an explanation pursuant to numerous phone calls to his office from the members of the class following their receipt of the notice and claim forms. Respondent maintains the letter was to drum up more claims so the court would not believe the suit was an attorney–generated class action with few actual complaints. In reading the protective order narrowly, as required, we cannot hold that the letter sent in these circumstances constituted a plain violation of the order.

We are aware that respondents may have lost their ability to receive a reimbursement as the settlement fund was depleted due to the number of claims filed. While the letter may have, in fact, caused the filing of the additional claims, each claim was legitimate and did not contribute any personal gain to attorney Leed. Although we understand respondents' concern with parties sending "undisclosed communications" such as this in class actions, we cannot say that Leed's conduct clearly violated the protective order entered 5 years prior to the date of the letter and after a settlement was reached. It seems reasonable to us that the settlement agreement superseded the original protective order. Since Leed was required to send notice to the class we cannot say that notice was excessive.

Accordingly, we hold that Leed's conduct was not contumacious and thus reverse the trial court's order so holding as well as the award of $350 attorney's fees.[4] We likewise

---

[4]While we would rarely disturb a trial judge's finding of contempt, the facts of this case are unusual in that Judge Horswill had presided over the action and had entered all orders. Judge Chan, who entered the contempt order, had no contact with the case or its development prior to the time that he ruled on respondents' motion to show cause why petitioner should not be held in contempt. Only Judge Horswill could properly be in a position to rule whether the notice was excessive in light of the settlement agreement.

overrule the Court of Appeals affirmance of that order and its award of $500 attorney's fees.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, and DORE, JJ., concur.

Reconsideration denied March 2, 1982.