[No. 47848–1.   En Banc.   January 14, 1982.]

MARY DARLING, *Individually and as Guardian, Petitioner,* v. CHAMPION HOME BUILDERS COMPANY, ET AL, *Respondents.*

*Roberts & Shefelman* and *William G. Tonkin,* for petitioner.

*Merrick, Hofstedt & Lindsey, P.S.,* by *Michael C. Hayden,* for respondent Bendix Mobile Homes.

*Steven V. Lundgren* and *Philip A. Talmadge* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.*), for respondents Liberty Homes, Inc., et al.

DIMMICK, J.—Petitioner commenced this class action in February 1981, alleging damages caused by toxic fumes from urea formaldehyde contained in mobile homes. In May 1981, before the class was certified, the trial court entered an order generally prohibiting communications by the parties, their counsel and agents. The order specifically included within its prohibition Peter Breysse, Associate Professor at the University of Washington, Department of Environmental Health, who has researched the subject involved in the instant action. Professor Breysse has not appealed and is not a party to this action. Petitioner moved for and the trial court denied reconsideration of the order. We accepted direct review and remand the matter to the trial court for further consideration to develop a clear record and make findings of fact and conclusions of law as to the appropriateness of the order in the instant case as it

applies to the actual parties and their counsel.

The sole issue before us is the validity of the order prohibiting communications entered herein. In analyzing the order we necessarily discuss King County Local Rule 23(f) that apparently mandates the prohibition. Petitioner contends that the trial court abused its discretion under Superior Court Civil Rules in entering the order because the order was not an appropriate order authorized by CR 23(d). We are unable to determine whether the order is appropriate because the record is inadequate as the court made no findings of fact or conclusions of law. We hold that entry of an order authorized by King County Local Rule 23(f) is discretionary. Therefore, if any party disputes the rule's applicability, the trial court shall make a determination of the appropriateness of the order based upon a clear record and specific findings of fact and conclusions of law.[1]

On February 18, 1981, petitioner filed a class action complaint on behalf of herself and other Washington residents similarly situated who own or lease mobile homes. This class allegedly includes more than 10,000 people. The action is against various manufacturers and dealers of mobile homes. The allegations in essence are that respondents manufactured and sold mobile homes that include component materials containing urea formaldehyde and toxic fumes from the formaldehyde are injurious to people living in the homes. Attached to the complaint was an affidavit of and report prepared by Peter Breysse, Associate Professor at the University of Washington, describing the

---

[1] Due to our disposition of this matter we do not reach petitioner's contention that the order is invalid as an unconstitutional restraint on free speech. Full consideration of the constitutional issue should await a case with a fully developed record concerning possible abuses of the class action device. The United States Supreme Court in *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 68 L. Ed. 2d 693, 101 S. Ct. 2193 (1981), did not decide what standards the First Amendment mandates with regard to a similar order. The court did, however, "observe that the order involved serious restraints on expression. This fact, at minimum, counsels caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses." 452 U.S. at 104, 101 S. Ct. at 2202.

effects of urea formaldehyde exposure.

On May 18, 1981, one of the respondents moved for entry of a protective order in order to clarify the applicability of King County Local Rule 23(f) to Professor Breysse. The memorandum in support of the motion referred to Professor Breysse as an agent of petitioner or her counsel. The motion was accompanied by an affidavit of one of the respondent's attorneys setting forth actions of Professor Breysse in regard to his work in the area. In response, petitioners requested a continuance of the hearing because Professor Breysse would be out of town and unable to attend the hearing. The motion for continuance was accompanied by an affidavit of petitioner's counsel stating that Professor Breysse was in no way an agent of petitioner or her counsel. Professor Breysse also submitted an affidavit specifically denying that he referred people to petitioner's counsel.

The trial court refused to continue the hearing and on May 28, 1981, the court entered the protective order at issue. The court made no separate findings of fact or conclusions of law. The judge relied on the apparent mandatory language of local rule 23(f)[2] and adopted it in toto

---

[2]King County Local Rule 23(f) provides:

"(f) Prevention of Potential Abuses. After commencement of every potential and actual class action under CR 23, all parties thereto and their counsel are hereby forbidden, directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent of and approval of the communication by order of the court. Any such proposed communication shall be presented to the court in writing with a designation of or description of all addressees and with a motion and proposed order for prior approval by the court of the proposed communication and proposed addressees. The communications forbidden by this rule include, but are not limited to, (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action; (b) solicitation of fees and expenses and agreements to pay fees and expenses, from potential and actual class members who are not formal parties to the class action; (c) solicitation by formal parties to the class action of requests by class members to opt out in class actions under CR 23(b)(3); and (d) communications from counsel or a party which may tend to misrepresent the status, purposes and effects of the action, and of actual or potential court orders therein, which may create impressions tending, without cause, to reflect adversely on any party,

applying the same to Professor Breysse as an agent of petitioner or her counsel.[3]

Petitioner contends the protective order is invalid in that *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 68 L. Ed. 2d 693, 101 S. Ct. 2193 (1981), is controlling. In *Gulf Oil* the Supreme Court invalidated the entry of a protective order similar to the one at issue herein under rule 23 of the Federal Rules of Civil Procedure. The district court had entered the order without making findings of fact or writing an explanatory opinion. Respondent on July 6 submitted for court approval a proposed leaflet to be sent to class members advising them to seek an attorney before signing any release. The court waited until August 10 to rule on the motion. On that day, 2 days after the expiration of a 45–day deadline for acceptance of Gulf's offer by class members, the court denied the motion in a 1–sentence order containing no explanation. As a result, the named plaintiffs and their counsel were prevented from undertaking any *communication with the class members prior to the deadline.* The Supreme Court concluded that the district court abused its discretion under Fed. R. Civ. P. 23(d) in entering

---

any counsel, the court, or the administration of justice. The obligations and prohibitions of this rule are not exclusive. All other ethical, legal and equitable obligations are unaffected by this rule.

"This rule does not forbid communications between an attorney and his client or a prospective client, who has on the initiative of the client or prospective client consulted with, employed, or proposed to employ the attorney, or communications occurring in the regular course of business or in the performance of the duties of a public office or agency (such as the attorney general) which do not have the effect of soliciting representation by counsel, or misrepresenting the status, purposes or effects of the action and orders therein."

[3]The May 28, 1981, order provides:
"IT IS HEREBY ORDERED, ADJUDGED AND DECREED:
"1. In this action, all parties thereto, their counsel, and the agents of either, including but not limited to Peter A. Breysse, Associate Professor at the University of Washington, are hereby forbidden directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent of and approval of the communication by order of the Court." The remainder of the order is identical to local rule 23(f) set forth in footnote 2.

the protective order because there was no record revealing the grounds on which the trial court could have determined that the order was necessary or appropriate.

Our conclusion in the instant case is different from that reached by the Supreme Court in *Gulf Oil.* Although we may look to federal decisions for guidance in interpreting our civil rules, *American Discount Corp. v. Saratoga W., Inc.,* 81 Wn.2d 34, 37, 499 P.2d 869 (1972), we are by no means bound by those decisions. In addition, *Gulf Oil* may be distinguished from the case at hand. In *Gulf Oil* the trial judge had actually used the protective order in an unreasonable manner when he waited over a month to rule on the plaintiffs' request to notify class members and thus denied their ability to communicate. In the instant case there has been no abuse of the order.

Class actions serve an important function in our system of justice. *Gulf Oil.* Class actions authorized by CR 23 are remedial in character. The objectives of the procedure include the resolution of many individual claims in a single action and the elimination of the repetitious and possibly inconsistent adjudications involving common questions or similar relief. Class actions also establish effective procedures for redress of injuries for those whose economic position would not allow individual lawsuits. 7 C. Wright & A. Miller, *Federal Practice* § 1754, at 543 (1972). Accordingly, they improve access to the courts. *See Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339, 63 L. Ed. 2d 427, 100 S. Ct. 1166 (1980).

Although class actions are advantageous and important in our system of justice, they present opportunities for abuse, both intentional and inadvertent, as well as problems of management for the court and counsel. The potential abuses of the class action process include stirring up litigation, solicitation of funds, the maintenance of an action by counsel, exertion of undue influence on class members to opt out, and misrepresentations creating false impressions of the action and the court's rule. *See* 1 Pt. 2 J. Moore, *Federal Practice* (1979).

Abuses are exceptions in class action litigation rather than the rule. Nevertheless, they do support the idea that it is appropriate to guard against the relatively rare abuses. J. Moore, *supra* § 1.41. The order entered herein and King County Local Rule 23(f) are similar to an order and rule recommended as an appropriate method to control of perceived abuses of a class action. J. Moore, *supra* § 1.41. Although criticized,[4] the protective order may in fact be the only effective method to control abuses.[5] In fact, since its enactment in 1974 King County Local Rule 23(f) has operated effectively. Additionally, trial courts were employing similar protective orders to control class actions before the local rule was adopted.

In exercising its control over a class action, including entering protective orders, the trial court's discretion is limited. It may only make "appropriate orders" in the conduct of the action. CR 23(d). Accordingly, although local rule 23(f) appears to extend the prohibition of communications to all class actions, the trial court must exercise its discretion if the rule's applicability is challenged and only apply the provisions if appropriate to do so. Petitioner contends that the order entered herein was not appropriate and thus the trial court abused its discretion in making it. We are unable, however, to determine whether the order entered herein was appropriate. The court did not make any findings of fact or conclusions of law to support the order nor was there a clear record reflecting the court's weighing of the need for a limitation and the potential interference with the rights of the parties.

---

[4]Comment, *Restrictions on Communication by Class Action Parties and Attorneys,* 360 Duke L.J. (1980); Comment, *Judicial Screening of Class Action Communications,* 55 N.Y.U. L. Rev. 671 (1980); 49 Geo. Wash. L. Rev. 339 (1981).

[5]Other methods have been suggested for controlling potential abuses. For example, a court may enter an order requiring parties to file copies of nonprivileged communications to class members. *See, e.g., Developments in the Law— Class Actions,* 89 Harv. L. Rev. 1318, 1600–04 (1976); Wilson, *Control of Class Actions Abuses Through Regulation of Communications,* 4 Class Act. Rep. 632 (1975).

The purpose of requiring the trial judge to formulate and articulate findings of fact and conclusions of law in the course of determining whether to impose a challenged prohibition of communications is to ensure that the judge has dealt fully with all the issues involved and to provide that the parties involved and this court on appeal are fully informed as to the bases of the decision. Since the order creates at least potential difficulties for the parties, their counsel and agents, an articulated consideration of the bases for imposing the prohibition is necessary when a party has challenged its use.

We remand the matter to the trial court for a determination in accordance with this opinion.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, and DORE, JJ., concur.