IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DANIEL BABARE, individually and on behalf of all others similarly situated,<br><br>                  Appellant,<br><br>   v.<br><br>CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY d/b/a "Sound Transit," a special-purpose metropolitan municipal corporation,<br><br>                  Respondent. | No. 86363-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Daniel Babare appeals an order dismissing without prejudice his putative class action lawsuit against Sound Transit for alleged violations of the Fair and Accurate Credit Transactions Act (FACTA), 15 U.S.C. § 1681c(g). We reverse the dismissal and remand for consideration of his motion to substitute lead plaintiffs and the merits of Sound Transit's CR 12(b)(6) motion.

FACTS

In November 2022 Babare filed a putative class action complaint against Sound Transit alleging that Sound Transit recklessly or knowingly violated FACTA's receipt truncation provision, 15 U.S.C. § 1681c(g)(1),[1] by printing the expiration dates of

---

[1] 15 U.S.C. § 1681c(g)(1) provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or

customers' credit or debit cards on ticket purchase receipts.[2]

In his complaint, Babare alleged that he purchased a transit ticket using his personal credit card at Sound Transit's Northgate station in April 2022 and received an electronically printed receipt that included the expiration date of his credit card. Babare claimed that the disclosure of the expiration date constituted an invasion of his privacy and exposed him to a heightened risk of identity theft. Babare defined the putative class as:

> All natural persons in the United States who, within the two years prior to the commencement of this action through the date of the Court's order granting class certification, engaged in one or more transactions using a debit card or credit card at a Sound Transit fare payment terminal, at which time Sound Transit's terminal devices were programmed to generate a printed receipt displaying the expiration date of the credit card or debit card used in connection with such transaction(s).

As part of his complaint, Babare requested the trial court to certify the proposed class and appoint him as class representative.

In November 2023 Babare informed Sound Transit that he intended to substitute another named plaintiff as class representative due to personal issues "that are making it prohibitively difficult to continue as lead plaintiff." Babare intended to move to substitute out of the lead plaintiff role and stay the case to allow time "to confirm the new lead plaintiff."

On December 15, 2023, the parties filed a stipulated motion to stay proceedings and strike remaining case deadlines. The parties informed the court:

> Babare filed this suit … alleging that Sound Transit violated [FACTA] and seeking to certify a class of similarly situated plaintiffs. No class has yet

the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

[2] Babare asserted that Sound Transit's willful violations entitled the putative class to statutory damages under 15 U.S.C. § 1681n.

been certified and discovery is not yet complete. In November of 2023, as the Parties were nearing the close of individual discovery and Sound Transit was preparing to file a motion for summary judgment, Babare determined that due to certain very serious personal issues, he could no longer proceed as lead plaintiff in this case. Sound Transit requested that Babare voluntarily dismiss this lawsuit without prejudice, and Babare declined, intending instead to substitute in a new lead plaintiff in his place. If the putative class is later certified, Babare intends to be a member.

Sound Transit stated it intended to file a motion to dismiss and that Babare intended to oppose the motion and file a motion to substitute out as the lead plaintiff.[3] The parties informed the trial court that "[b]oth Parties have noted their respective motions for consideration on January 19, 2024, and both Parties agree that it is necessary and appropriate to stay the case and strike all remaining case deadlines until the Court can rule on these motions." On December 19 the trial court granted the motion to stay.

Three days later, Sound Transit filed its motion to dismiss, requesting the court to dismiss the lawsuit with prejudice under CR 12(b)(6). Sound Transit claimed Babare "is no longer willing to continue as a plaintiff in this lawsuit" and argued that his voluntary dismissal rendered the case non-justiciable. Sound Transit stated that Babare had not yet identified a "viable substitute plaintiff" and that, even without his absence, he "and any comparable substitute" lacked standing because "Babare alleges only a bare technical violation of FACTA without any injury-in-fact."

On January 10, 2024, Babare filed his motion opposing Sound Transit's dismissal motion. Earlier that day, Babare had filed a motion to substitute the lead

---

[3] Sound Transit conceded at oral argument that though Babare sought to substitute for a new lead plaintiff, he did not intend to withdraw from the lawsuit as a member of the putative class, nor did he file a motion to withdraw from the lawsuit. Wash. Ct. of Appeals oral arg., Babare v. Cent. Puget Sound Reg'l Transit Auth., No. 86363-1-I (Apr. 23, 2025), at 10 min., 32 sec. through 10 min., 52 sec., 11 min., 00 sec. through 11 min, 08 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025041414/.

plaintiff. The motion to substitute included attached declarations from the proposed co-lead plaintiffs.

In his substitution motion, Babare requested the court relieve him of his lead plaintiff duties and replace him with the two proposed co-lead plaintiffs under CR 23. Babare explained that "he does not feel he can continue to adequately serve as Lead Plaintiff given [personal] hardship." The substitution motion was noted for a hearing on January 26, one week after the scheduled hearing on Sound Transit's motion to dismiss.

At the dismissal motion hearing, the trial court acknowledged that Babare had filed a "motion to substitute the plaintiffs" set for a hearing the following week. The court stated, "I don't know what's in it" and that it was not going to consider the substitution motion as part of its analysis of Sound Transit's dismissal motion. The trial court continued,

> And I'm curious what affect that [motion to substitute] might have on this particular motion with where we are. And I'd like the parties more or less to focus on – I'm left at this point: Do we have a plaintiff right now?

Sound Transit argued to the court, "Babare has suffered no injury, and so lacks standing. That's also true of the proposed substitutes." Thus, Sound Transit claimed, "substitution would be futile because the claims would be subject to the same deficiencies [as Babare's]."

During Babare's argument, the following exchange occurred:

> THE COURT: So even assuming I agree with you that it's through the Washington lens [to determine standing], who am I applying the standing analysis to? Because Mr. Babare's out, effectively; we don't have other plaintiffs in at this point?
> [Babare's counsel]: Um-hum.

4

THE COURT: So I don't have a factual analysis to determine whether there's – under either federal or state standard, whether there's standing to bring this suit.

Babare asserted that the substitution motion "rightfully has to be heard or considered …. The new plaintiffs have standing. … [And] their facts track with the existing complaint."

At the end of the hearing the court delivered its oral ruling granting Sound Transit's motion to dismiss. The court stated,

> I'm going to grant the motion to dismiss without prejudice. And here's my analysis. This is a 12(b) motion, so I have to view it under the lens of a motion to dismiss.
> …
> The real issue, I think, is we have kind of a contested voluntary withdrawal of this case and trying to keep the case alive somehow, even though we don't have a plaintiff. It is a putative class action, but we don't have a motion for a class action, we don't have a definition of a class action, we're just not quite there.
> …
> So I just have to keep this under the lens of the plaintiff that I have before me.

The court continued:

> That plaintiff is withdrawing. I don't have another plaintiff before me, so I don't think I have authority to rule on anything else because I have a complaint with no plaintiff that's currently active before me. It does mean that you can bring a complaint down the road with other plaintiffs. You might have similar issues with respect to standing that might have merit. They might not have merit. It'll depend on the factual allegations that are brought in that particular complaint.
> …
> I realize this case has gone on for a year. There's been a lot of discovery. That makes the whole motion to dismiss context give me a brief pause. But it's also why I think it has to be that way for purposes of figuring out who the plaintiff is before me and whether I have a plaintiff to analyze the case through.
> So I'll ask the parties to submit a proposed order consistent with that ruling.

In its written order, the court stated that it dismisses Babare's complaint without prejudice based on the motion, documents filed in support and in opposition, record, "and on Plaintiff Daniel Babare's … voluntary decision to withdraw from this lawsuit." The court determined that "in light of the grant of the Motion [to dismiss], Babare's Motion to Substitute Lead Plaintiff is mooted." Babare moved for reconsideration the following month, which the trial court denied.

Babare appeals.

DISCUSSION

Appealability

Sound Transit argues that because the trial court's dismissal without prejudice does not bar Babare from refiling his lawsuit, this appeal should be dismissed due to lack of finality.

Courts look to the judgment's effect to determine whether it is appealable. Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 487, 200 P.3d 683 (2009). Under RAP 2.2(a)(3), a dismissal without prejudice is not appealable as a matter of right unless its practical effect is to determine an action by discontinuing or preventing a final judgment. Munden v. Hazelrigg, 105 Wn.2d 39, 44, 711, P.2d 295 (1985); Eng v. Specialized Loan Servicing, 20 Wn. App. 2d 435, 441-42, 500 P.3d 171 (2021). We liberally interpret the RAPs "to the end that each cause and issue be decided on its merits." Reichelt v. Raymark Indus., Inc., 52 Wn. App. 763, 765, 764 P.2d 653 (1988); RAP 1.2(a).[4] Appellate courts may waive or alter the rules to serve the interests of

---

[4] RAP 1.2(a) provides:
These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance

6

justice. RAP 1.2(c); Wachovia, 165 Wn.2d at 487.

Where the statute of limitations has run to bar an appellant from refiling their case, the "action has effectively been discontinued" whether the court dismissed it with or without prejudice. Tjart v. Smith Barney, Inc., 107 Wn. App. 885, 893, 28 P.3d 823 (2001). We have also previously held that where a trial court grants a CR 12(b)(6) motion on the grounds that the claim was non-justiciable or legally insufficient, the practical effect of the judgment is to discontinue the action. Eng, 20 Wn. App. 2d at 442; Barnier v. City of Kent, 44 Wn. App. 868, 871, 872 n.1, 723 P.2d 1167 (1986).

The instant case presents us with a chicken-and-the-egg problem in considering whether the trial court's dismissal without prejudice effectively discontinued Babare's lawsuit. Babare challenges the basis of the trial court's dismissal of his putative class action for lack of plaintiff despite his pending motion to substitute lead plaintiffs. Alternatively, if we agree with Sound Transit that the court's decision should be affirmed on the basis that Babare's originally filed putative class action is non-justiciable or lacks standing, then the dismissal without prejudice is final and appealable. We cannot consider these questions without reaching the merits of Babare's appeal. In this circular scenario, we exercise our discretion to review Babare's claim in the interests of justice.[5] See Wachovia, 165 Wn.2d at 487 (citing RAP 1.2(c)).

---

or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).

[5] Additionally, because the trial court dismissed Babare's proposed class action prior to class certification, we do not have a finalized claim before us to consider whether the statute of limitations has run to practically bar Babare from refiling his class action. See DeFunis v. Odegaard, 84 Wn.2d 617, 622, 529 P.2d 438 (1974) ("Class actions are specialized types of suits, and as a general rule must be brought and maintained in strict conformity with the requirements of CR 23.").

<u>Abuse of Discretion</u>

Babare contends that the trial court erred in granting Sound Transit's motion to dismiss based on its "hyper-technical" determination that the case lacked a plaintiff to proceed. Babare argues that rather than dismissing the case, the trial court should have considered his pending motion for substitution. We agree.

The parties dispute the applicable standard of review. Babare avers that because Sound Transit's dismissal motion was brought under CR 12(b)(6), we should review the court's order de novo. <u>See</u> <u>Kinney v. Cook</u>, 159 Wn.2d 837, 842, 154 P.3d 206 (2007) (stating that appellate courts review dismissals under CR 12(b)(6) de novo). However, the court did not consider the merits of the CR 12(b)(6) motion. Indeed, Babare, as he seemed to clarify at oral argument, challenges the court's procedural decision not to continue the case to consider his motion to substitute prior to ruling on the motion to dismiss. Wash. Ct. of Appeals oral arg., <u>supra</u>, at 8 min., 14 sec. through 9 min., 26 sec.

A trial court's procedural management of its own trial calendar is most appropriately reviewed for an abuse of discretion. <u>See</u> <u>State ex rel. Sperry v. Superior Ct.</u>, 41 Wn.2d 670, 671, 251 P.2d 164 (1952); <u>see also</u> <u>State v. Castillo-Lopez</u>, 192 Wn. App. 741, 746, 370 P.3d 589 (2016) ("[T]he decision to grant or deny a continuance rests within the sound discretion of the trial court.") (citing <u>State v. Downing</u>, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004)). "It is the trial court's responsibility to arrange its trial calendar and to determine in what manner the cases can be most expeditiously and fairly tried in order that justice can be given to all of the parties." <u>Sperry</u>, 41 Wn.2d at 671. As such, appellate courts should not interfere with the way that a trial court handles its own affairs unless it plainly abuses its discretion. <u>Id.</u> A trial court abuses its discretion

when its decision is manifestly unreasonable, exercised on untenable grounds, or is based on untenable reasons. Mayer v. Sto Indus. Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). "A trial court's discretionary decision 'is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" T.S. v. Boy Scouts of Am., 157 Wn.2d 416, 423-24, 138 P.3d 1053 (2006) (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). A decision is manifestly unreasonable where the trial court adopts a view that no reasonable person would take and arrives at a decision that is outside the range of acceptable choices. State v. Hampton, 184 Wn.2d 656, 670-71, 361 P.3d 734 (2015). A trial court's failure to exercise its discretion, such as where it fails to make a necessary decision, is fundamentally an abuse of discretion. State v. Stearman, 187 Wn. App. 257, 265, 348 P.3d 394 (2015).

Here, while the trial court characterized Sound Transit's motion to dismiss as "a 12(b) motion," the court did not provide any authority for its decision to dismiss. Rather, finding that Babare withdrew from the action, the court concluded that the lack of an "active" plaintiff extinguished its jurisdiction "to rule on anything else." It is apparent from the court's oral ruling that it considered Babare's purported absence from the suit to effectively render the case moot, particularly because the class had not yet been certified.[6]

---

[6] "A trial court's oral ruling may be used to complement and explain written findings." Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 801, 432 P.3d 821 (2018) (citing Ferree v. Doric Co., 62 Wn.2d 561, 567, 383 P.2d 900 (1963)); see also Stieneke v. Russi, 145 Wn. App. 544, 566, 190 P.3d 60 (2008) (stating appellate court "may resort to the trial court's oral decision to ascertain the legal and factual basis upon which the trial court predicated its finding").

Sound Transit argues that nothing prohibited the court from exercising its "discretion to dismiss a lawsuit where the sole plaintiff withdraws." But Babare had not withdrawn his claim against Sound Transit. The record plainly shows that Babare merely intended to withdraw as putative class representative. The trial court's finding that there was no plaintiff seeking relief before it is thus unsupported by the record.

Even assuming arguendo that Babare withdrew from the suit as the sole named plaintiff and proposed class representative, we hold that the trial court's decision to dismiss the putative class action prior to considering a pending motion to substitute lead plaintiffs is manifestly unreasonable.

As a general matter, trial courts should facilitate procedural matters to practically and substantively address questions, rather than disposing of them on technicalities. Discover Bank v. Lemley, 180 Wn. App. 121, 135, 320 P.3d 205 (2014); see also Rinke v. Johns-Manville Corp., 47 Wn. App. 222, 227, 734 P.2d 533 (1987) ("[M]odern rules of procedure are intended to allow the court to reach the merits, not to dispose of cases on technical niceties."). Courts "should avoid procedural traps for the litigants." Discover Bank, 180 Wn. App. at 135. The overriding responsibility of courts is to reach a just determination in every action. Burnet v. Spokane Ambulance, 131 Wn.2d 484, 498, 933 P.2d 1036 (1997) (citing CR 1).

In class action matters, Washington courts have long looked to federal authority. Summers v. Sea Mar Cmty. Health Centers, 29 Wn. App. 2d 476, 487, 541 P.3d 381 (citing DeFunis v. Odegaard, 84 Wn.2d 617, 622-23, 529 P.2d 438 (1974); Johnson v. Moore, 80 Wn.2d 531, 533, 496 P.2d 334 (1972)), review denied, 3 Wn.3d 1002, 549 P.3d 112 (2024). Federal circuit courts tend to allow the timely substitution of named

plaintiffs in putative class actions prior to certification. Phillips v. Ford Motor Co., 435 F.3d 785, 787 (7th Cir. 2006) (collecting cases). "The courts thus disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs." Id. Even in class actions where the named plaintiffs' claims have been dismissed prior to class certification, the Ninth Circuit has held that courts retain jurisdiction to grant—and are obligated to consider—the intervention of new putative class members. Degamo v. Bank of Am., NA, 849 F. App'x 620, 623 (9th Cir. 2021) (citing Kennerly v. United States, 721 F.2d 1252, 1260 (9th Cir. 1983)).[7]

In the present matter, at the time the trial court entered its ruling on Sound Transit's CR 12(b)(6) motion, the court was aware of Babare's pending motion to substitute new lead plaintiffs. The court previously granted the parties' stipulated stay motion, in which the parties informed the court that Babare intended to file both an opposition motion and a motion to substitute lead plaintiff in response to Sound Transit's dismissal motion. Babare filed the motions on the same day. The court expressed concern at the dismissal motion hearing that it could not consider the merits of Sound Transit's standing argument for lack of a plaintiff, but it incorrectly presumed Babare had already withdrawn while ignoring his pending motion to substitute lead plaintiffs. The court thereby disregarded a procedural path through which it could address the issue of whether a plaintiff with a viable claim existed to keep the putative class action alive. This was an abuse of discretion.

---

[7] Babare cites the Ninth Circuit's unpublished decision in Degamo in his reply brief. GR 14.1(b) permits citation to unpublished opinions from other jurisdictions if permitted by the law of the other jurisdiction. Federal Rule of Appellate Procedure (FRAP) 32.1(a) allows citation to unpublished federal judicial decisions filed on or after January 1, 2007.

Both parties cite the unreported federal district court case <u>Aguilar v. Boulder Brands, Inc.</u>, which involved the same factual scenario as the instant case. No. 3:12-CV-01862-BTM-BGS, 2014 WL 4352169, at *8 (S.D. Cal. Sept. 2, 2014) (court order). In <u>Aguilar</u>, the court considered the question of whether a putative class action was mooted for the purposes of Article III jurisdiction where Aguilar sought to withdraw as the named plaintiff and proposed class representative. <u>Id.</u> at *1, 6-9. Like the present matter, Aguilar coupled her request to withdrawal with a proposed substitute class representative and sought to remain a part of the class. <u>Id.</u> at *1, 7-9. Observing that the mootness doctrine should be flexibly applied to class actions, and "may also apply to a not-yet-certified class," the district court rejected Boulder Brands' formalistic argument that the case was mooted the moment Aguilar moved to withdraw as proposed class representative. <u>Id.</u> at *1, 6-8. The court determined that where Aguilar did not settle or dismiss her putative class action, intended to remain a part of the class, and was able to produce a proposed substitute immediately, the claim remained "very much alive." <u>Id.</u> at *9. We agree with the <u>Aguilar</u> court that a "temporary void on the plaintiff's side of the 'v'" should not cause a court "to turn a blind eye to the facts of the case" where a substitute class representative "wait[s] in the wings." <u>Id.</u> at *7-8.

To dismiss a putative class action for want of plaintiff when proposed substitute lead plaintiffs wait in the wings frustrates the practical objectives of class actions to avoid multiplicity of litigation, save class members the cost and trouble of filing individual suits, and to protect the defendant from identical successive actions. <u>Chavez v. Our Lady of Lourdes Hosp. at Pasco</u>, 190 Wn.2d 507, 515, 415 P.3d 224 (2018); <u>see Aguilar</u>, 2014 WL 4352169, at *8 (observing that allowing substitution of proposed class

representative upon withdrawal of former proposed representative "preserves scarce judicial resources" and "allows resolution of the case on the merits"). "The objectives of the procedure include the resolution of many individual claims in a single action and the elimination of the repetitious and possibly inconsistent adjudications involving common questions or similar relief." Darling v. Champion Home Builders Co., 96 Wn.2d 701, 706, 638 P.2d 1249 (1982). Class actions allow plaintiffs to aggregate their individual claims to "establish effective procedures for redress of injuries for those whose economic position would not allow individual lawsuits." Id. (citing 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1754, at 543 (1972); Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980)). A court's refusal to consider proposed substitute lead plaintiffs who may be able to sustain litigation for a putative class thus creates the risk of discouraging potential claimants from seeking relief or, alternatively, squandering judicial resources by requiring successive actions based on the same grievance. See Scott v. Cingular Wireless, 160 Wn.2d 843, 851-52, 161 P.3d 1000 (2007); Roper, 445 U.S. at 339.

Here, considering the pending motion to substitute lead plaintiffs prior to ruling on the dismissal motion would have furthered the objectives of class actions and facilitated the trial court's resolution of the issue of whether Babare or similarly situated plaintiffs have standing to sustain a claim under FACTA. We otherwise fail to see any well-reasoned basis for the trial court's procedural decision to dismiss the putative class action prior to considering the pending motion to substitute lead plaintiffs. We therefore conclude that the trial court abused its discretion, and remand for the trial court to first

13

consider Babare's substitution motion[8] and subsequently to consider Sound Transit's

CR 12(b)(6) motion on the merits as it pertains to the issue of standing.

## CONCLUSION

Reversed and remanded for further proceedings consistent with this opinion.

_____ Coburn, J.

WE CONCUR:

_____ Feldman, J.

_____, ACJ

---

[8] For the sake of judicial efficiency, we note that the trial court may permit the substitution of a putative class representative without an amended complaint where the named plaintiffs' original complaint remains active, including where the class is not yet certified. Elter v. United Servs. Auto. Ass'n, 17 Wn. App. 2d 643, 655-56, 487 P.3d 539 (2021).